1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8             FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ANTHONY W. BRASWELL,                    No.  2:15-cv-2672-EFB

11           Plaintiff,

12      v.                                   ORDER

13   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,

14
             Defendant.
15

16

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title

19   XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment.  For

20   the reasons discussed below, plaintiff's motion is granted, the Commissioner's motion is denied,

21   and the matter is remanded for further proceedings.

22   I.      BACKGROUND

23        Plaintiff filed an application for SSI, alleging that he had been disabled since August 22,

24   2006.[1]  Administrative Record ("AR") 228-236.  His application was denied initially and upon

25   reconsideration.  *Id*. at 110-115, 118-123.  On March 3, 2014, a hearing was held before

26   administrative law judge ("ALJ") L. Kalei Fong.  *Id*. at 47-79.  Plaintiff was represented by

27   ─────────────

28        [1]  Plaintiff subsequently amended his disability onset date to July 23, 2012.  *See* AR 27.

                                        1

counsel at the hearing, at which he and a vocational expert testified.  *Id.*

On June 13, 2014, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[2]  *Id.* at 27-41.  The ALJ made the following specific findings:

1.  The claimant has not engaged in substantial gainful activity since July 23, 2012, the amended onset date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: bipolar disorder with psychotic features; depressive disorder; antisocial personality disorder; cannabis dependency; alcohol and amphetamine dependency in partial remission; degenerative disc disease of the cervical and lumbar spine; and degenerative joint disease of the feet (20 CFR 416.920(c)).

        * * *

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

* * *

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) in that he can stand and walk for six hours of an eight hour day; sit for six hours of an eight hour day; can lift and carry twenty five pounds frequently and occasionally; can frequently balance, bend, crouch, crawl, kneel, stoop, climb; can frequently interact with supervisors and co-workers but rarely with the public – generally he must avoid public contact; he can maintain concentration, persistence and pace for simple repetitive tasks in a non-competitive work environment with little to no changes in routine.

* * *

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born [in] 1963 and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  The claimant subsequently changed age category to closely approaching advanced age but he [sic] undersigned finds no good cause to apply the age rules non-mechanically (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant could perform (20 CFR 416.969 and 416.969(a)).

* * *

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 23, 2012, the date the application was filed (20 CFR 416.920(g) .

*Id.* at 29-40.

Plaintiff's request for Appeals Council review was denied on October 26, 2015, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 3-8.

/////

3

1    II.    LEGAL STANDARDS

2          The Commissioner's decision that a claimant is not disabled will be upheld if the findings

3    of fact are supported by substantial evidence in the record and the proper legal standards were

4    applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

5    *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

6    180 F.3d 1094, 1097 (9th Cir. 1999).

7          The findings of the Commissioner as to any fact, if supported by substantial evidence, are

8    conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is

9    more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

10   Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a

11   conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

12   *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

13         "The ALJ is responsible for determining credibility, resolving conflicts in medical

14   testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

15   2001) (citations omitted). "Where the evidence is susceptible to more than one rational

16   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

17   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

18   III.   ANALYSIS

19         Plaintiff argues that the ALJ erred in rejecting the opinions of non-examining physicians,

20   his treating physician, and a therapist. ECF No. 13 at 13-25.

21         The weight given to medical opinions depends in part on whether they are proffered by

22   treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more

23   weight is given to the opinion of a treating professional, who has a greater opportunity to know

24   and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

25   1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to

26   considering its source, the court considers whether (1) contradictory opinions are in the record;

27   and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a

28   treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81

4

1    F.3d at 831.  In contrast, a contradicted opinion of a treating or examining medical professional

2    may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.

3    *Id*. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is

4    contradicted by a supported examining professional's opinion (e.g., supported by different

5    independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

6    1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

7    However, "[w]hen an examining physician relies on the same clinical findings as a treating

8    physician, but differs only in his or her conclusions, the conclusions of the examining physician

9    are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

10    Dr. Robert Stanfield, one of plaintiff's treating physicians, completed a medical source

11    statement on behalf of plaintiff's disability application.  AR 1126.  Dr. Stanfield diagnosed

12    plaintiff with degenerative joint disease, high cholesterol, chronic foot pain, bipolar disorder,

13    panic attacks, and depression.  *Id*.  He indicated that plaintiff's primary impairments were bipolar

14    disorder and depression, which caused insomnia and paranoia.  *Id*.  Dr. Stanfield opined that

15    plaintiff was unable to work due to his impairments.  *Id*.

16    Plaintiff's medical records were reviewed by non-examining physician Dr. Timothy

17    Schumacher, who opined that plaintiff was not significantly limited in his ability to carry out very

18    short and simply instructions, perform activities within a schedule, maintain regular attendance,

19    be punctual within customary tolerance, sustain an ordinary routine without special supervision,

20    work in coordination with or in proximity to others without being distracted; get along with

21    coworkers or peers without distraction, maintain socially appropriate behavior, and make simply

22    work-related decisions.  AR 89.  Dr. Schumacher further opined that plaintiff was moderately

23    limited in his ability to carry out detailed instructions, maintain attention and concentration for

24    extended periods, interact appropriately with the general public, accept instructions and respond

25    appropriately to criticism from supervisors, complete a normal workday and workweek without

26    interruption from psychologically based symptoms, and to perform at a consistent pace without

27    an unreasonable number of breaks.  As to concentration and persistence, he opined that plaintiff's

28    symptoms of depression restricted him from sustaining difficult-detailed 3-to-4 step assignments

over extended periods, but that he could complete routine 1 to 2 step assignments for up to 2 hours intervals during a regular workday and workweek.  *Id*.  Non-examining physician Dr. Colsky also reviewed the record and concurred in Dr. Schumacher's opinion.  *Id*. at 103-104.

The record also contains a medical source statement from plaintiff's therapist, Rick Presta, L.M.F.T.  AR 1118-1124.  Mr. Presta addressed plaintiff's bipolar disorder and opined that plaintiff could not meet competitive standards in his ability to remember work-like procedures, understand and remember very short and simple instructions, maintain attention for two hour segments, sustain an ordinary routine without special supervision, work in coordination with or proximately to others without being unduly distracted, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting, and deal with normal work stress.  *Id*. at 1121.

A.    Drs. Schumacher and Colsky

Plaintiff first argues that the ALJ erred by failing to fully incorporate Drs. Colsky and Schumacher's opinions into the RFC determination.  Plaintiff contends that although the ALJ purported to accept Dr. Colsky's opinions, he failed to incorporate the physician's opinion that plaintiff is limited to performing one and two step assignments into plaintiff's RFC.[3]  ECF No. 13 at 13-14.

In assessing plaintiff's RFC, the ALJ accorded substantial weight to the opinion of Dr. Colsky who, according to the ALJ, "opined the [plaintiff] could perform non-public simple repetitive tasks."  *Id*. at 37.  However, as noted by plaintiff, Dr. Colsky did not explicitly find that plaintiff could perform simple repetitive tasks.  Instead, Dr. Colsky, as well as Dr. Schumacher, opined that plaintiff was limited to "routine 1 to 2 step assignments."  *Id*. at 89, 104.  The difference is significant.

/////

---

[3]  As noted by plaintiff, the ALJ's decision did not specifically address the opinion given by Dr. Schumacher.  However, Dr. Schumacher's opinion is virtually identical to Dr. Colsky's opinion, which was addressed by the ALJ.  Accordingly, any error in failing to separately address Dr. Schumacher's opinion was harmless.  *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability).

1  The Ninth Circuit recently concluded that a limitation to one and two step tasks is more

2 restrictive than a limitation to performing simple repetitive work. *Rounds v. Comm'r Soc. Sec.*

3 *Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015). In *Rounds*, the ALJ determined that the plaintiff was

4 not disabled based on testimony from a vocational expert that an individual with plaintiff's RFC,

5 which limited plaintiff to performing one to two step tasks, could perform three different jobs

6 requiring, each requiring the ability to perform Level Two reasoning. *Id*. at 1002-1103. The

7 court found that the ALJ erred by failing to resolve an apparent conflict between an RFC limiting

8 the claimant to performing one and two step tasks and the demands of performing "Level Two

9 reasoning, which requires a person to apply commonsense understanding to carry out detailed but

10 uninvolved written or oral instructions." *Id*. (quotations omitted). The court observed that a

11 limitation to one and two step tasks is more akin to Level One reasoning, which "requires a

12 person to apply commonsense understanding to carry out simple one- or two-step instructions."

13 *Id*. (quotations omitted).[4]

14  The court further held that the ALJ's failure to resolve the conflict was not harmless. *Id*.

15 at 1004. The court explained that "the ALJ did not merely restrict Rounds to 'simple' or

16 'repetitive' tasks." *Id*. Instead, the ALJ limited the plaintiff to one to two step tasks, but failed to

17 provide any explanation "as to why the VE or the ALJ may have believed that Rounds' specific

18 limitation to 'one to two step tasks' should not be taken at face value." *Id*.

19  Here, the ALJ purported to give substantial weight to Dr. Colsky's opinion, but failed to

20 include in plaintiff's RFC the physician's opinion that plaintiff was limited to one and two step

21 assignments. The Commissioner argues, however, that the ALJ's finding that plaintiff could

22

---

[4] The DOT's complete definitions for Level 1 and Level 2 reasoning are as follows:

23

24 Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions.
Deal with standardized situations with occasional or no variables in or from these situations
25 encountered on the job.

26 Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral
instructions. Deal with problems involving a few concrete variables in or from standardized
27 situations.

28 DOT, Appendix C, 1991 WL 688702.

1  perform simple repetitive tasks is consistent with Dr. Schumacher and Dr. Colsky's opinion.  ECF

2  No. 16 at 7.  The Commissioner contends that when these physicians "were asked to provide

3  additional explanation of their overall opinion, both referenced other sections of the initial and

4  reconsideration determinations where they opined that [plaintiff] could perform simple, routine,

5  repetitive work."  *Id*.

6        In the section of the form reserved for providing additional explanation for the opinion,

7  both Dr. Colsky and Dr. Schumacher stated "See Psycho MC Review."  AR 90, 104.  The

8  "Psycho MC Review" section, however, merely indicates that a mental RFC "is completed to

9  reflect ability to perform routine work."  AR 85.  It does not contain an opinion that plaintiff is

10  capable of performing simple repetitive tasks.  *Id*.  Moreover, a complete review of the disability

11  determination explanation forms at both the initial and reconsideration level (which is where the

12  non-examining opinions are provided) fails to reveal any opinion from Dr. Schumacher or Dr.

13  Colsky that plaintiff can perform simple repetitive tasks.  Thus, the Commissioner's argument is

14  not supported by the record.

15        It is apparent from the record that the ALJ erred by rejecting without any explanation the

16  opinions of  Drs. Colsky and Schumacher that plaintiff was limited to one to two step

17  assignments.  *See* SSR 96-6p, 1996 WL 374180, at *2 (ALJs must consider opinions from non-

18  examining sources and explain the weight given to these opinions in their decision); *Shafer v.*

19  *Astrue*, 518 F.3d 1067, 1069-70 (9th Cir. 2008) (finding that the ALJ's silent disregard of a

20  portion of a non-examining physician's opinion "contravened governing regulations requiring

21  him to . . . evaluate every medical opinion received."); *Vincent v. Heckler*, 739 F.2d 1393, 1394-

22  95 (9th Cir. 1984) (the ALJ must explain why "significant probative evidence has been

23  rejected.").

24        Plaintiff further argues that the error was not harmless as the ALJ concluded she could

25  perform jobs that are inconsistent with a limitation to one and two step tasks.  ECF No. 13 at 14-

26  15.  At step five, the ALJ relied on a vocational expert's testimony that an individual with

27  plaintiff's RFC, including a limitation to simple routine work, could perform work as a cleaner,

28  laundry worker, and car wash attendant.  AR 40.  As noted by plaintiff, the laundry worker and

1   car wash attendant positions both require Level Two reasoning.  *See* Laundry Worker, DOT

2   361.684–014, 1991 WL 672983; Car-Wash Attendant, DOT 915.667-010, 1991 WL 687869.  As

3   previously noted, there is an apparently inconsistency between a limitation to one and two step

4   tasks and the performance of Level Two reasoning, which the ALJ failed to resolve due to his

5   finding that plaintiff could perform simple repetitive work.  *See Rounds*, 807 F.3d at 1003-04.

6   Accordingly, the ALJ's finding that plaintiff could work as laundry worker or car wash attendant

7   is not supported by substantial evidence.

8           The ALJ, however, also concluded that plaintiff was not disabled because she could work

9   as a cleaner, a position that only requires Level One reasoning.  AR 40.  Plaintiff contends,

10  however, that the ALJ also erred in finding that he has the RFC to perform this position due to a

11  failure to adequately consider Schumacher's opinion[5] addressing his limitations involving social

12  interactions.  ECF No. 13 at 15-19.  According to plaintiff, the ALJ erred by failing to provide

13  any reason "for rejecting the discrete limitation described by Dr. Schumacher that [plaintiff] has

14  moderate limitations in the ability to get along with peers or supervisors."  ECF No. 13 at 18-19.

15          Plaintiff's argument misstates the record.  Dr. Schumacher did not find that plaintiff was

16  moderately limited in getting along with peers.  Rather, he concluded that plaintiff was not

17  significantly limited in his "ability to get along with coworkers or peers," and that he could

18  "maintain socially appropriate behavior and . . . adhere to basic standards of neatness and

19  cleanliness."  AR 89-90.  While the form completed by Dr. Schumacher reflected that plaintiff

20  was moderately limited in his to "ability to accept instruction and respond appropriately to

21  criticism from supervisors," the narrative portion of the opinion clarified that plaintiff's

22  "depression and antisocial tendencies would interfere with close interactions with the general

23  public and with accepting *strong* criticism form [sic] supervisors."  *Id*. (emphasis added).  Dr.

24  Schumacher also clarified that plaintiff could engage in routine contracts with coworkers and

25  employers in settings where major collaboration with others is not involved.  *Id*.

26

27          [5] As noted, Dr. Schumacher and Dr. Colsky provided the same opinion.  However, given
    that plaintiff only references Dr. Schumacher's opinion in relation to this argument, the court will
28  do the same.

1    The ALJ appropriately synthesized these opinions and concluded that plaintiff was limited

2  to only frequent interaction with supervisors and co-works but that he must generally avoid public

3  contact.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (an ALJ may

4  translate assessed mental limitations into "the only concrete restrictions available to him.").

5  Accordingly, plaintiff's contention that the ALJ impermissibly rejected Dr. Schumacher's opinion

6  that plaintiff is moderately limited in his ability to get along with peers or supervisors is without

7  merit.

8    As the ALJ's finding that plaintiff can work as a cleaner is supported by substantial

9  evidence, any error in finding that he could perform the positions of laundry worker and car wash

10  attendant was harmless.  *Gallo v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 648, 650 (9th Cir.

11  2011) ("Because the ALJ satisfied his burden at Step 5 by relying on the VE's testimony about

12  the Addresser job, any error that the ALJ may have committed by relying on the testimony about

13  the 'credit checker' job was harmless.").

14    B.    Dr. Robert Stanfield

15    Plaintiff also argues that the ALJ erred by failing to provide legally sufficient reasons for

16  rejecting the opinion of Dr. Stanfield, plaintiff's treating physician.  ECF No. 13 at 24-25.

17    In assessing plaintiff's RFC, the ALJ noted Dr. Stanfield's opinion that plaintiff was

18  incapable of working due to bipolar disorder, depression, degenerative joint disease, elevated

19  cholesterol, chronic foot pain, schizophrenia, and panic attacks.  AR 39.  The ALJ, however, did

20  not indicate what weight he gave this opinion.  Instead, the ALJ merely observed that the

21  determination of disability is an issue reserved to the Commissioner.  *Id.*

22    The Ninth Circuit has held that "the opinion of the treating physician is not necessarily

23  conclusive as to either the physical condition or the ultimate issue of disability."  However, while

24  an ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate

25  issue of disability, . . . he cannot reject them without presenting clear and convincing reasons for

26  doing so."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

27    The ALJ correctly noted that Dr. Stanfield's opinion addressed the ultimate issue of

28  disability.  AR 39.  That fact alone, however, does not justify the ALJ's silent rejection of Dr.

1 Stanfield's opinion.  Treating physicians may provide opinions as to the ultimate issue of

2 disability, and while such opinions are not conclusive, the ALJ is still required to provide legally

3 sufficient reasons for rejecting them.  *Reddick*, 157 F.3d at 725; *see Rodriguez v. Bowen*, 876

4 F.2d at 762 n.7 ("We do not draw a distinction between a medical opinion as to a physical

5 condition and a medical opinion on the ultimate issue of disability."); *Garrison v. Colvin*, 759

6 F.3d 995, 1012 (9th Cir. 2014) ("[w]here an ALJ does not explicitly reject a medical opinion or

7 set forth specific, legitimate reasons for crediting one medical opinion over another, he errs"); *see*

8 *also* Social Security Ruling 96-5p ("adjudicators must always carefully consider medical source

9 opinions about any issue, including opinions about issues that are reserved to the

10 Commissioner").[6]

11        The ALJ provided no explanation for his rejection of Dr. Stanfield's opinion in favor of

12 the opinions from non-examining sources.  Accordingly, the case must be remanded for further

13 consideration of the medical opinion evidence of record.[7]

14 IV.    CONCLUSION

15        Accordingly, it is hereby ORDERED that:

16        1.  Plaintiff's motion for summary judgment is granted;

17        2.  The Commissioner's cross-motion for summary judgment is denied;

18        3.  The matter is remanded for further proceedings consistent with this order; and

19 /////

20 /////

21

22        [6]  The Commissioner argues the ALJ properly rejected Dr. Stanfield's opinion because it was conclusory and unsupported by the record.  ECF No. 16 at 10.  The ALJ, however, did not

23 rely on this reason as a basis for rejecting Dr. Stanfield's opinion, and consequently the argument cannot be consider in assessing the sufficiency of the ALJ's decision.  *See Bray v. Comm'r Soc.*

24 *Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings

25 offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (a district court is

26 "constrained to review the reasons the ALJ asserts").

27

28        [7]  Because the matter must be remanded for further consideration of Dr. Stanfield's opinion, the court declines to address plaintiff's additional argument.

1    4.  The Clerk is directed to enter judgment in plaintiff's favor.

2  DATED:  March 31, 2017.

3

4                                          EDMUND F. BRENNAN
                                           UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28